UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
In re:

LEHMAN BROTHERS HOLDINGS INC.,
et al.,

                                            11-cv-6194(DAB)
                                        <u>MEMORANDUM & ORDER</u>

            Debtors.
------------------------------------X
KA KIN WONG, et al.,

            Plaintiffs,

        v.

HSBC BANK USA, NATIONAL ASSOCIATION,
et al.,

            Defendants.

------------------------------------X

DEBORAH A. BATTS, United States District Judge.


    Plaintiffs commenced an adversary proceeding in the United

States Bankruptcy Court for the Southern District of New York on

March 12, 2009, Adversary Proceeding No. 09-01120 (JMP).  Before

the Court is Plaintiffs' Motion to Withdraw the Reference of the

Adversary Proceeding to the Bankruptcy Court Pursuant to the

Supreme Court's Opinion in <u>Stern v. Marshall</u> ("Motion").  For

the reasons stated below, Plaintiffs' Motion is DENIED.

I.   <u>Background</u>

The facts and procedural history do not appear to be in
dispute and are taken from the Parties' briefing for the pending
Motion.[1]  Plaintiffs are ten Hong Kong residents seeking to
represent a class of purchasers of notes, termed "Minibonds,"
that were issued by a special purpose vehicle named Pacific
Finance.  (Defs. Lehman Brothers Special Financing Inc. and
Lehman Brothers Holdings Inc.'s Resp. to Pls.' Mot. to Withdraw
the Reference of the Adversary Proceeding to the Bankruptcy Ct.
Pursuant to the Supreme Court's Op. in <u>Stern v. Marshall</u>
("Lehman Opp.") at 6.)  Pacific Finance used the funds from the
sale of the Minibonds to purchase collateral to secure a swap
agreement with Defendant Lehman Brothers Special Financing, Inc.
("LBSF") and its obligations to the Minibond holders.  (<u>Id.</u>)
Defendant HSBC Bank USA, NA ("HSBC") was appointed trustee of
the collateral.  (<u>Id.</u>)  These transactions, Pacific Finance's
issuance of the Minibonds and appointment of HSBC as trustee,
were completed pursuant to trust deeds governed by English law.
(<u>Id.</u> at 6-7.)  The collateral that Pacific Finance purchased are
notes issued by another special purpose vehicle named Saphir
Finance.  (<u>Id.</u> at 7.)  Saphir Finance also sold the notes,
purchased collateral, and entered into a swap agreement with

---

[1] The majority of the factual and procedural history is taken from Defendants'
briefs because Plaintiffs' briefing is devoid of such information.

2

LBSF.  (Id.)  Defendant BNY Corporate Trustee Services Limited ("BNY") was appointed as the trustee of the collateral that Saphir Finance purchased.  (Id.)  In September-October 2008, the Lehman Defendants filed for bankruptcy.  (Motion, Ex. A (Amended Complaint) ¶¶ 57, 60.)  The Lehman Defendants are the only parties to the operative complaint that have sought bankruptcy protection.

On March 12, 2009, Plaintiffs filed an adversary proceeding in the Bankruptcy Court.  (Lehman Opp. at 6.)  The essence of Plaintiffs' claims were that Plaintiffs are entitled to 100% of the collateral underlying the Minibonds (approximately $1.5 billion) and that the Lehman Brothers estate is not entitled to any of the proceeds of the collateral.  (See, e.g., Lehman Opp. 8; Mem. of Def. HSBC Bank USA, N.A. in Opp'n to Pls.' Mot. to Withdraw the Reference of the Adversary Proceeding to the Bankruptcy Ct. ("HSBC Opp.") at 4; Pls.' Omnibus Reply In Further Support Of Their Mot. To Withdraw The Reference Of The Adversary Proceeding To The Bankruptcy Ct. Pursuant To The Supreme Court's Op. In Stern v. Marshall ("Reply") at 2-4.)  The first three counts in Plaintiffs' original complaint sought (1) a declaratory judgment that certain collateral securing the obligations to LBSF under various swap contracts "is property of the [proposed class] and not property of the bankruptcy estate;" (2) an injunction against LBSF, HSBC and BNY to prevent them

3

from asserting any claim over the collateral; and (3) imposition

of a constructive trust over the collateral against all entities

that hold collateral to which Plaintiffs believe they are

entitled. (Lehman Opp. at 8; see also id., Ex. I (Tr. Of Hr'g

at 22, Wong v. HSBC (In re: Lehman Bros. Holdings Inc.), No. 08-

13555 (JMP) (Bankr. S.D.N.Y. Nov. 18, 2009) ("Tr. of Hearing

before Judge Peck")[2].) In the original Complaint, Plaintiffs

stated that "[t]he declaratory and injunctive relief sought

herein is a core proceeding within the meaning of 28 U.S.C. §

157(b)." (Id. at 8 (quoting Original Compl. ¶ 15 (attached as

Ex. E)).) After initiating the adversary proceeding, Plaintiffs

sought to intervene in a separate adversary proceeding between

LBSF and BNY; however, the Bankruptcy Court denied Plaintiffs'

motion. (See id., Ex. P (Order Denying Motion to Intervene,

Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Serv. Ltd.

(In re: Lehman Bros. Holdings Inc.), Adversary Proceeding No.

09-01242 (JMP) (Bankr. S.D.N.Y. July 22, 2009).) Defendants

subsequently filed motions to dismiss, but, before the

Bankruptcy Court ruled on these motions, Plaintiffs moved to

withdraw the reference. (See id., Ex. H (Pls.' Mem. of Law in

---

[2] The Original Complaint also brought other claims seeking damages from HSBC
and several foreign defendants for alleged negligence, breach of fiduciary
duty and breach of contract in connection with losses Plaintiffs may incur in
connection with their purchases of Minibonds.

Supp. of Mot. to Withdraw the Reference of Adversary Proceeding
(July 31, 2009)).)

Judge Swain in the district court denied Plaintiffs' motion
to withdraw the reference without prejudice.  (See id., Ex. A
(Order, Wong v. HSBC USA Inc. (In re: Lehman Bros. Holdings
Inc.), No. 09 Civ. 6841 (LTS) (S.D.N.Y. Oct. 14, 2009)).)  Judge
Swain found that – in light of the relevant procedural posture
and pending motions to dismiss, which would frame the question
of whether the claims were core or noncore – the bankruptcy
court should determine whether the proceeding is core.  (Id.,
Ex. B (Transcript of Hearing before Judge Swain re: motion to
withdraw the reference, Wong v. HSBC USA Inc. (In re: Lehman
Bros. Holdings, Inc.), 09-cv-6841 (LTS) (S.D.N.Y. Oct. 14,
2009)) at 31.)  Judge Swain noted that there was a "very strong
argument that [claims 1-3] are core, at least to the extent that
they go to the question of whether particular assets are
property of the estate and implicate through the claims for
injunctive relief and constructive trust the control of property
that is claimed to be property of the estate, which is certainly
a matter that affects the administration of the estate and is
within the type of actions and causes of action contemplated by
the nonexclusive list of core proceedings in Section 157(b)(2)
of Title 28."  (Id. at 31-32.)  Judge Swain also found that
considerations of efficiency and uniformity in the

5

administration of bankruptcy law, and the prevention of forum
shopping, militate in favor of declining to withdraw the
reference at that time.  (Id. at 32.)

The Bankruptcy Court subsequently granted the then-pending
motions to dismiss.  (Lehman Opp., Ex. I (Tr. of Hearing before
Judge Peck) at 22.)  Specifically, with respect to Counts 1-3,
the Court held that Plaintiffs lacked standing to sue LBSF
directly because, as provided in the relevant trust documents
governing issuance of the Minibonds, the appropriate party to
bring a direct claim on behalf of the Minibond holders was HSBC
as trustee, and not the individual noteholders.  (Id. at 23-26.)
The Court also denied Plaintiffs' request to amend the complaint
to allege a derivative – compared to a direct - action, because
Plaintiffs could not allege special circumstances, as required
under English law, to justify stepping into the shoes of the
trustee and bringing an action on behalf of the trust.  (Id. at
26-27.)[3]  On appeal, the District Court affirmed the dismissal as
to Counts 1 and 2 but held that Plaintiffs should be allowed to
replead those Counts in a derivative capacity.  (Wong v. HSBC
USA, Inc., Nos. 10 Civ. 0017 (WHP), 10 Civ. 0096 (WHP), 2010 WL
3154976, at *7 (S.D.N.Y. Aug. 9, 2010).)  The Court also vacated

_____

[3] Having dismissed all of the claims against any debtors, the Bankruptcy Court
then dismissed claims 4-13 because the Court lacked "related-to"
jurisdiction.  (See id., Ex. I at 29.)

6

the Bankruptcy Court's dismissal of Count 3 and remanded for
further consideration. (<u>Id.</u> at *8.)

Plaintiffs subsequently filed their Amended Complaint on
September 2, 2011. (<u>See</u> Motion, Ex. A (Amended Complaint).)
The Amended Complaint brings three derivative claims seeking:
(1) declaratory relief against all defendants; (2) injunctive
relief against all defendants; and (3) imposition of a
constructive or resulting trust against all defendants. (<u>See</u>
<u>id.</u> ¶¶ 178-195.) The Amended Complaint also alleges a claim on
behalf of the proposed class seeking imposition of a
constructive or resulting trust. (<u>See</u> <u>id.</u> ¶¶ 202-211.) In the
Amended Complaint, Plaintiffs state that they do not consent to
the entry of final orders and judgment by the Bankruptcy Court.
(<u>See</u> <u>id.</u> ¶ 19.)

In the Amended Complaint, Plaintiffs assert that, <u>inter</u>
<u>alia</u>, pursuant to the Saphir Notes' transaction documents,
LBSF's insolvency constitutes an event of default and requires
repayment of the Minibonds to Plaintiffs. (Motion at 2 (citing
<u>id.,</u> Ex. A (Amended Complaint) ¶¶ 57, 131-33.)) Several
Defendants moved to dismiss the Amended Complaint on various
grounds. (Lehman Opp. at 10; HSBC Opp. at 6.) Before the
motions to dismiss were ruled upon, Plaintiffs brought the
present Motion, arguing that "[b]ecause Plaintiffs brought

7

common law claims against all defendants, the Supreme Court's
recent decision in Stern[ v. Marshall] compels the conclusion
that the Court must withdraw the reference of this case to the
Bankruptcy Court." (Motion at 3.)  The Lehman Defendants and
HSBC opposed Plaintiffs' Motion, and the Official Committee of
Unsecured Creditors joined the Lehman Defendants' opposition
materials.  Defendants argue that the Supreme Court's holding in
Stern does not address the present situation, being "a claim
against a bankruptcy estate, seeking to have the Bankruptcy
Court decide the rights (if any) of a party asserting claims
against a debtor's estate that arose out of the filing of a
debtor's chapter 11 petition." (Lehman Opp. at 13; see also id.
at 15 ("Recent decisions reviewing Stern and prior Supreme Court
precedent confirm that Stern does not apply to claims brought
against a debtor's estate which turn on the applicability of
rights created by the Bankruptcy Code."); id. at 15 ("[I]n their
adversary proceeding, Plaintiffs seek a declaration that certain
collateral, now in LBSF's possession under the Settlement,
should be removed from LBSF's estate, submitting that the ipso
facto provisions of the Bankruptcy Code do not apply to the
relevant contracts."); HSBC Opp. at 7-8 (arguing that Plaintiffs
are mistaken in asserting that Stern divests the bankruptcy
court of authority to address the pending motions to dismiss).)
In their opposition materials, the Lehman Defendants informed

8

the Court that a settlement has been reached among LBSF, HSBC,
Pacific Finance, Saphir Finance, BNY, and other parties,
resolving the disputes over the collateral at issue in
Plaintiffs' adversary proceeding.  (Lehman Opp. at 10.)  The
Lehman Defendants represent that more than 90% of the Minibond
holders voted to approve the settlement.  (Id. at 11.)  The
Lehman Defendants further represent that the settlement has been
fully consummated and the Minibond holders have received up to
96.5% of their principal.  (Id.)


II.  Analysis

     A. Legal Standard for a Motion to Withdraw the Reference

     District courts have original jurisdiction over bankruptcy
cases and all civil cases "arising under" or "related to" cases
under Title 11.  (28 U.S.C. § 1334.)  Under 28 U.S.C. § 157(a),
district courts may refer actions within the court's bankruptcy
jurisdiction to bankruptcy judges of the district.  (28 U.S.C. §
157(a).)  The Southern District of New York has a standing order
that provides for automatic reference of such cases.  (See In
re: Standing Order of Reference Re: Title 11, 12 Misc. 32
(S.D.N.Y. Jan. 31, 2012) ("Standing Order").)

     Under 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and
enter final judgments in "all core proceedings arising under

9

title 11, or arising in a case under title 11," which are
subject to deferential review by a district court.  (28 U.S.C. §
157(b)(1); see also Adelphia Recovery Trust v. FLP Grp., Inc.,
No. 11 Civ. 6847, 2012 WL 264180, at *1-3 (S.D.N.Y. Jan. 30,
2012).)  Bankruptcy courts may hear non-core proceedings
otherwise related to a case under title 11, however bankruptcy
courts may only issue proposed findings of fact and conclusions
of law to the district court, which may become final after de
novo review by the district court.  (28 U.S.C. § 157(c)(1).)
Section 157(b)(2) provides a non-exhaustive list of core
proceedings.  (Id. § 157(b)(2).)

        Section 157(d) contemplates withdrawal of the reference,
which may be mandatory, under certain circumstances, or
discretionary, when cause is shown.


                    i. Mandatory Withdrawal

        Section 157(d) provides that "[t]he district court shall,
on timely motion of a party, so withdraw a proceeding if the
court determines that resolution of the proceeding requires
consideration of both title 11 and other laws of the United
States regulating organizations or activities affecting
interstate commerce."  (28 U.S.C. § 157(d).)  This provision is
construed narrowly in the Second Circuit and requires withdrawal

only if "substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." (See <u>Walker, Truesdell, Roth & Assocs. v. Blackstone Grp. (In re Extended Stay, Inc.)</u>, 466 B.R. 188, 196 (S.D.N.Y. 2011) (quoting <u>Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)</u>, 922 F.2d 984, 995 (2d Cir. 1990)).) Courts within this district construe the phrase "substantial and material consideration" to require "significant interpretation of federal laws that [C]ongress would have intended to have decided by a district judge rather than a bankruptcy judge." (<u>Id.</u>) (citations and quotations omitted).) Issues arising under non-title 11 laws must dominate those arising under title 11 to warrant mandatory withdrawal. (<u>Id.</u> (citation omitted).) Another Court in this district has held that the holding in <u>Stern</u>[4] does not mandate withdrawal under Section 157(d) because whether the bankruptcy court has authority to enter final judgment does not implicate the regulation of organizations or activities affecting interstate commerce. (<u>See id.</u> at 200-03) Instead, "<u>Stern</u> simply addresses a question of constitutional law concerning the authority of an Article I court to enter a final judgment. Its application . . .

---

[4] See section II.A.ii <u>infra</u> for discussion about the Supreme Court's holding in <u>Stern v. Marshall</u>.

does not implicate activities affecting interstate commerce."
(<u>Id.</u> at 201 (citation omitted).)


### ii. <u>Withdrawal for Cause</u>

Under 28 U.S.C. 157(d), a district court may withdraw a referred proceeding "on timely motion of any party, for cause shown." (28 U.S.C. § 157(d).) The Statute does not define "cause," however the Second Circuit, in <u>Orion Pictures Corp. v. Showtime Networks, Inc.</u>, 4 F.3d 1095 (2d Cir. 1993), instructed courts to "first evaluate whether the claim is core or non-core," and then "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping and other related factors." (<u>Id.</u> at 1101; <u>see also</u> <u>Residential Funding Co., LLC v. UBS Real Estate Secs., Inc.</u>, No. 14 Civ. 03039, 2015 WL 1062264, at *3 (S.D.N.Y. Mar. 6, 2015).)

Under <u>Orion</u>, the threshold inquiry was whether the claim at issue was core or non-core, because "it is upon this issue that questions of efficiency and uniformity will turn." (<u>Orion</u>, 4 F.3d at 1101.) The Second Circuit in <u>Orion</u> emphasized that "the fact that a bankruptcy court's determination on non-core matters is subject to <u>de novo</u> review by the district court could lead the latter to conclude that in a given case unnecessary costs

could be avoided by a single proceeding in the district court."
(Id.)

The concept of core versus non-core proceedings was first
articulated in Northern Pipeline Construction Co. v. Marathon
Pipe Line Co., 458 U.S. 50 (1982) (plurality opinion).
Analyzing the constitutionality of bankruptcy court jurisdiction
under the Bankruptcy Act of 1978, the Court in Marathon stated
that "the restructuring of debtor-creditor relations, which is
at the core of the federal bankruptcy power, must be
distinguished from the adjudication of state-created private
rights, such as the right to recover contract damages."
(Marathon, 458 U.S. at 71.)  The Court concluded that bankruptcy
judges could not constitutionally be vested with jurisdiction to
decide a state-law contract counterclaim against an entity that
was not otherwise part of the bankruptcy proceedings.  (Id. at
52, 87 (plurality opinion); id. at 91 (Rehnquist, J., concurring
in judgment).  The Plurality of the Court recognized a category
of cases involving "public rights" that could be
constitutionally assigned to "legislative" courts.  While the
Plurality did not agree on the scope of the exception, a full
majority concluded that it did not include adjudication of the
state law claim at issue in the case.  (Id. at 69–72 (plurality
opinion); see also id. at 90–91 (Rehnquist, J., concurring in
judgment).)  In response to the decision in Marathon, "Congress

codified the core/non-core distinction in 28 U.S.C. § 157 [as part of the 1984 Act], and in making this distinction, 'Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and intended that the 'core' jurisdiction would be construed as broadly as possible subject to the constitutional limits established in <u>Marathon</u>.'" (<u>Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)</u>, 475 B.R. 9, 26-28 (S.D.N.Y. 2012) (quoting <u>Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)</u>, 304 F.3d 223, 229 (2d Cir. 2002)).) "A core proceeding . . . is one that invokes a substantive right under the Bankruptcy Code or that could arise only in the context of a bankruptcy case." (<u>Lehman Bros. Holdings Inc. v. Wellmont Health Sys.</u>, No. 14 Civ. 01083, 2014 WL 3583089, at *2 (S.D.N.Y. July 18, 2014); <u>see also</u> <u>Stern v. Marshall</u>, 131 S. Ct. 2594, 2605 (2011) ("Under our reading of the statute, core proceedings are those that arise in a bankruptcy case or under Title 11.").)

Subsequent to the <u>Orion</u> decision, the Supreme Court in <u>Stern v. Marshall</u> held that Section 157(b)(2) overstepped constitutional boundaries in certain circumstances such that it would be unconstitutional for bankruptcy courts to enter final judgments in certain kinds of core proceedings. (<u>See</u> <u>Stern</u>, 131 S. Ct. at 2620; <u>see also</u> <u>Adelphia</u>, 2012 WL 264180 at *2; <u>Penson</u>

14

Fin. Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt., LLP),
479 B.R. 254, 260 (S.D.N.Y. 2012) ("In Stern, the Supreme Court
made clear that the 1984 Act failed to remedy all the
constitutional infirmities identified in [Marathon].") (citation
and quotation marks omitted).)  In Stern, Vickie Lynn Marshall
(public persona Anna Nicole Smith), filed a counterclaim in
bankruptcy court against Pierce Marshall, the son of Vickie's
late husband, J. Howard Marshall, for tortious interference with
a gift Vickie had expected from J. Howard.  (Stern, 131 S. Ct.
at 2601.)  Pierce, who had initially filed a claim for
defamation against Vickie in her bankruptcy proceeding,
challenged the bankruptcy court's constitutional jurisdiction to
enter final judgment on Vickie's tortious interference
counterclaim.  (Id.)  The Supreme Court in Stern held that,
although the bankruptcy court had statutory authority to enter
final judgment on Vickie's state law counterclaim, the
bankruptcy court lacked constitutional authority to do so.  (Id.
at 2608-20.)  Congress had improperly vested judicial power in a
non-Article III court when it authorized bankruptcy courts to
"enter a final judgment on a state law counterclaim that is not
resolved in the process of ruling on a creditor's proof of
claim."  (Id. at 2620.)  In determining that Article III did not
permit a bankruptcy court to issue final judgment on the state
law counterclaim at issue, the Court in Stern considered (1)

15

whether the counterclaim involved a public or private right; (2) whether the process of adjudicating the creditor's proof of claim would resolve the counterclaim; and (3) whether the parties consented to final adjudication by the bankruptcy court. (See id. at 2611, 2615-16, 2618.)  The Court emphasized, however, that its decision was "narrow," involved "one isolated respect" of the Bankruptcy Act, and did not "meaningfully change[] the division of labor" between bankruptcy courts and district Courts.  (Id. at 2620; see also In re Quigley Co., 676 F.3d 45, 52 (2d Cir. 2012); Adelphia, 2012 WL 264180 at *2.)

Courts in this district vary in their interpretation of how Stern affects application of the Orion factors when ruling on a motion to withdraw the reference.  For example, one approach is to modify the first Orion factor, which analyzed whether the claim is core or non-core, to instead determine whether the bankruptcy court has constitutional authority to adjudicate the matter under the three-part test in Stern.  (See, e.g., Wellmont Health Sys., 2014 WL 3583089, at *3 ("Post-Stern, courts in this district have concluded that the relevant inquiry under the first prong of the Orion test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter.") (citations and quotation marks omitted)); In re Arbco Capital, 479 B.R. at 262 ("This Court concludes, as have others in this district, that the relevant

16

inquiry under the first prong of the Orion test is not whether a matter is core or non-core, but whether the bankruptcy court has the authority to finally adjudicate the matter.").)

A second approach merely adds the three steps from Stern to the Orion factors as a separate inquiry. (See, e.g., Adelphia, 2012 WL 264180, at *3 ("After Stern, a court's consideration of a motion to withdraw reference to bankruptcy court should—in addition to the Orion factors—include consideration of: whether the claims at issue involve a public or private right; whether the claims will be resolved in ruling on a creditor's proof of claim, if any; and whether the parties consent to final adjudication by a non-Article III tribunal."); see also Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd., 905 F. Supp. 2d 526, 529 (S.D.N.Y. 2012).)

Finally, some courts continue to apply the Orion test as originally articulated with no modification in light of Stern. (See Dynegy, 905 F. Supp. 2d at 529-30 (collecting cases).)

Regardless of the approach selected, this Court notes that whether the bankruptcy court may constitutionally enter a final judgment is not in and of itself determinative of whether the Court should grant a motion to withdraw the reference. (Residential Funding, 2015 WL 1062264, at *4; see also Sheldrake Lofts LLC v. Remediation Capital Funding, LLC (In re Sheldrake

17

Lofts LLC), No. 14-cv-4274, 2014 WL 6450340, at *2 (S.D.N.Y.
Nov. 14, 2014) ("A determination that the Bankruptcy Court does
not have final adjudicative authority over a claim does not mean
that the reference must be withdrawn."); Moore Macro Fund, LP v.
Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.),
No. 14cv5053, 2014 WL 4635576, at *1 (S.D.N.Y. Sept. 5, 2014)
("However, this Court need not reach [the issue whether the
bankruptcy court has constitutional authority to enter a final
judgment] to decide that the motion to withdraw should be
denied. Lack of authority to enter a final judgment does not
necessarily mean the reference should be withdrawn.").)

Accordingly, the Court will consider the Orion factors in
conjunction with the issues raised in Stern regarding the
bankruptcy court's ability to enter final judgment.  (See
Residential Funding, 2015 WL 1062264, at *4 ("Thus, it is not
determinative of this Orion factor that the proceeding is core.
Instead, because the Bankruptcy Court cannot finally adjudicate
RFC's claims, this consideration weighs in favor of withdrawal
of the reference. Review of the remaining Orion factors,
however, persuades this Court to deny the motion to withdraw the
reference."); see also Adelphia, 2012 WL 264180, at *7 (finding
that, although the bankruptcy court lacked constitutional
authority to enter final judgment in the case, analysis of the
Orion factors weighed against granting the motion to withdraw

18

the reference); Tr. of Hr'g at 62:4-9, <u>Mich. State Hous. Dev.</u>
<u>Auth. v. Lehman Bros. Holdings Inc.</u>, No. 11 Civ. 3392 (JGK)
(S.D.N.Y. Sept. 14, 2011) ("MSHDA Tr.") (attached as Ex. F to
the Lehman Opp.) ("Regardless of whether this proceeding is core
or noncore, MSHDA has failed to demonstrate that the court
should exercise its discretion to withdraw the reference in this
case.  To the contrary, concerns of efficiency, judicial
economy, and the uniform administration of bankruptcy law weigh
strongly against withdrawing the reference here." (citing <u>Orion</u>,
4 F.3d at 1101)).)

The party seeking to withdraw the reference bears the
burden of demonstrating that permissive withdrawal is warranted.
(<u>See, e.g.</u>, <u>In re Sheldrake Lofts</u>, 2014 WL 6450340, at *1.)

### B. <u>Application</u>

#### i. <u>Mandatory Withdrawal</u>

It is not clear from the Motion whether Plaintiffs are
arguing that withdrawal of the reference to the bankruptcy court
is mandatory, or whether Plaintiffs merely request that this
Court exercise its discretion and withdraw the reference.
Plaintiffs have not expressly made any argument related to
mandatory withdrawal or the standard used by courts within this
Circuit.  Plaintiffs instead merely argue that the reference

19

<u>must</u> be withdrawn because Plaintiffs assert common law claims.
(<u>See, e.g.</u>, Motion at 1-2 ("To comply with the Supreme Court's
recent decision in [Stern], the Court must remove the reference
of this adversary proceeding to the United States Bankruptcy
Court for the Southern District of New York. . . . Under these
circumstances, where the Bankruptcy Court does not have the
authority to adjudicate Plaintiffs' claims, the proper
procedural mechanism is to withdraw the reference of this case
to the Bankruptcy Court so that an Article III Court may
adjudicate Plaintiffs' claims.").)  Plaintiffs do not argue,
however, that "substantial and material consideration of non-
Bankruptcy Code federal [law] is necessary for the resolution of
the proceeding."  (<u>See Nisselson v. Salim</u>, No 12 Civ. 92, 2013
WL 1245548, at *4 (S.D.N.Y. Mar. 25, 2013) (quoting <u>In re
Extended Stay</u>, 466 B.R. at 196 (quoting <u>In re Ionosphere Clubs,
Inc.</u>, 922 F.2d at 995)).)  The issues raised in <u>Stern</u>, which
Plaintiffs rely upon to support their Motion, do not implicate
regulation of organizations or activities affecting interstate
commerce, and Plaintiffs make no argument to the contrary.  (<u>See
In re Extended Stay</u>, 466 B.R. at 196.)  Accordingly, mandatory
withdrawal does not appear to be at issue in this case, and any
argument that withdrawal of the reference is mandatory would be
meritless.  This Court will therefore analyze Plaintiffs' Motion
under the standard governing withdrawal for cause.

ii. <u>Withdrawal for Cause</u>

At the outset, the Court notes that Plaintiffs have misstated the Supreme Court's holding in <u>Stern</u> and have utterly failed to argue that the facts of this case satisfy the criteria set forth in the Second Circuit for permissive withdrawal.

Plaintiffs suggest that <u>Stern</u>'s holding is broad and requires withdrawal of the reference when the bankruptcy court may not have authority to adjudicate the claims. (Motion 1-2.) But the Court's holding in <u>Stern</u> does not prohibit bankruptcy courts from hearing common law claims in all instances. (<u>See</u> <u>Stern</u>, 131 S. Ct. at 2620 ("Pierce has not argued that the bankruptcy courts 'are barred from 'hearing' all counterclaims' or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that 'finally decide[s]' them."); <u>see</u> <u>also</u> <u>id.</u> ("Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.").) As explained above,

21

courts interpret Stern narrowly.  The Supreme Court's holding in

Stern addressed when bankruptcy courts lack constitutional

authority to enter final judgment on certain core claims; the

Stern decision did not address the standard courts apply when

determining whether to withdraw the reference.  Of relevance

here, post-Stern courts within this Circuit continue to deny

motions to withdraw the reference even where the bankruptcy

court lacks constitutional authority to enter a final judgment

where analysis of the other Orion factors weighs in favor of

denying a motion to withdraw the reference.  (See, e.g.,

Residential Funding, 2015 WL 1062264, at *4; Adelphia, 2012 WL

264180, at *7-8.)  Plaintiffs have not addressed the Orion

factors in their Motion – nor have they even attempted to

address how the Court's holding in Stern affects a district

court's decision to withdraw the reference under Orion.

    Turning to the claims asserted in the Amended Complaint,

Plaintiffs seek, in addition to imposition of a constructive or

resulting trust, declaratory and injunctive relief regarding

their rights under the contracts at issue.  For example,

Plaintiffs seek declaratory relief establishing, inter alia,

that (1) one or more events of default, as defined in the

contract, occurred before, on, or after the date that the first

Lehman Defendant filed for bankruptcy; (2) certain provisions of

the relevant contract "are enforceable subordination provisions,

are protected by statutory safe harbors, do not constitute <u>ipso</u> <u>facto</u> provisions or give rise to improper 'preferences,' and are not otherwise unenforceable under the Bankruptcy Code in this case;" and (3) any rights the Lehman Defendants or HSBC may have in the proceeds or interest of the Minibonds are subordinate to those interests of the Minibond holders under principles of equitable subordination.  (Motion, Ex. A (Amended Complaint) ¶ 180.)  As Judge Swain held in denying Plaintiffs' earlier motion to withdraw the reference with respect to the original complaint – which contained nearly identical claims but asserted in a direct, rather than derivative, capacity - there is a very strong argument that these claims are core proceedings, particularly core proceedings over which the bankruptcy court has constitutional authority to enter final judgment.  (See Lehman Opp., Ex. B (Transcript of Hearing before Judge Swain re: motion to withdraw the reference, <u>Wong v. HSBC USA Inc. (In re:</u> <u>Lehman Bros. Holdings, Inc.)</u>, 09-cv-6841 (LTS) (S.D.N.Y. Oct. 14, 2009)) at 31-32 (analyzing Plaintiffs' earlier complaint, which asserted similar claims against the debtor defendants but in a direct, rather than derivative, capacity, finding that, with respect to the claims for declaratory relief (that the collateral is not property of the estate but is the property of the Minibond investors), injunctive relief (preventing defendants from asserting any claim to the collateral) and for

imposition of a resulting or constructive trust, there was "a
very strong argument" that those claims were core because they
"go to the question of whether particular assets are property of
the estate and implicate through the claims for injunctive
relief and constructive trust the control of property that is
claimed to be property of the estate, which is certainly a
matter that affects the administration of the estate and is
within the type of actions and causes of action contemplated by
the nonexclusive list of core proceedings in Section 157(b)(2)
of Title 28.").)  For example, Plaintiffs explicitly seek
declaratory relief stating that certain provisions contained in
the contracts at issue are not unenforceable under the
Bankruptcy Code.  (Motion, Ex. A (Amended Complaint) ¶ 180.)
Plaintiffs also seek declaratory relief that the rights of the
Minibond holders are superior to Defendants' rights under
principles of equitable subordination.  (Id.)  Without
determining whether the claims are core or not, the Court notes
that it is highly suspect that the rights Plaintiffs seek to
establish do not "aris[e] under title 11" or "aris[e] in a case
under title 11."   (See 28 U.S.C. § 157(b)(1); see also Mich.
State Hous. Dev. Auth. v. Lehman Bros. Derivative Prods. Inc.,
502 B.R. 383, 390-94 (Bankr. S.D.N.Y. 2013) (examining
provisions of the Bankruptcy Code that invalidate so called ipso
facto contractual clauses and analyzing whether a liquidation

24

provision, despite its _ipso_ _facto_ characteristics, falls within the safe harbor under the Bankruptcy Code).)

Notably, Defendants point to prior statements by Plaintiffs in other court submissions asserting that Plaintiffs' claims arise out of certain core bankruptcy issues related to application of _ipso_ _facto_ provisions of the bankruptcy code to the contracts at issue – such as the provisions that modify a party's contract rights because that party has commenced a bankruptcy proceeding. (_See, e.g._, Lehman Opp. at 18 n.2 (citing _id._, Ex. C (Pls.' Appeal of the Alternative Dispute Resolution Procedures Order for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Counterparties) at 12 (stating that earlier ruling by the Bankruptcy Court, termed by Plaintiffs as the "Ipso Facto Ruling," "construed materially identical payment provisions to those at issue in this case."); _id._, Ex. D (Pls.' Appeal of the Sixth Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts) at 8 ("The Bankruptcy Court's 'singular event' theory of the Bankruptcy Court's _ipso_ _facto_ provisions . . . is at the heart of this Adversary Proceeding.")).)

Assuming without deciding, this Court finds that there is a strong argument that Plaintiffs' claims here are core and are constitutionally within the province of the bankruptcy court for final adjudication. (See, e.g., MSHDA Tr. at 58-59 (attached as Ex. F to the Lehman Opp.) (finding "a strong basis for concluding that at the very least, central claims in this proceeding are core" where the counterclaims at issue seek "a declaratory judgment that certain provisions in the parties' agreement are unenforceable under provisions of the Bankruptcy Code" and others "assert the invalidity of a provision of the parties' agreement based on the ipso facto provisions of the Bankruptcy Code")). Accordingly, the core versus non-core factor weighs strongly against withdrawing the reference.

Should, after the bankruptcy court issue a final ruling in this matter, the Court determine that the bankruptcy court could not have entered a final order or judgment consistent with Article III of the United States Constitution, the District Court will treat the Order of the bankruptcy court as proposed findings of fact and conclusions of law, consistent with the Amended Standing Order of Reference in this District. (See Standing Order; see also In re Arbco Capital, 479 B.R. at 258 (stating that the Standing Order was recently amended "to make clear that the Bankruptcy Court retains jurisdiction to hear matters related to the bankruptcy proceedings and to issue

26

proposed findings of fact and conclusions of law when the
Bankruptcy Court lacks constitutional authority to enter a final
judgment").)  This Court has no trouble concluding that,
although it is likely that the bankruptcy court has
constitutional authority to enter final judgment, the bankruptcy
court has statutory authority to at least issue proposed
findings of fact and conclusions of law in these proceedings.
(See 28 U.S.C. 157(c).)  Given that the bankruptcy court has, at
minimum, authority to issue proposed findings of fact and
conclusions of law, the Court next considers the remaining Orion
factors to determine whether they weigh in favor of withdrawing
the reference at the present time.


## 1. Efficient Use of Judicial Resources

     Efficient use of judicial resources weighs in favor of
adjudicating this matter in the bankruptcy court.  Although
Judge Peck, who has tremendous familiarity with the Lehman
bankruptcy and related cases, is no longer assigned to this
matter, the Bankruptcy Court generally has greater expertise
with application of the ipso facto provisions of the Bankruptcy
Code to contracts similar to those at issue here.  Further, the
Lehman Defendants assert that the relevant parties with interest
in the collateral at issue, including Minibond holders on whose

behalf Plaintiffs seek to bring this case, have settled this matter. (See Lehman Opp. at 10-11.)  In fact, the Lehman Defendants represent that the settlement has been fully consummated and that the collateral at issue has already been distributed to the Minibond holders. (Id. at 11.)  Given the procedural posture – with pending motions to dismiss and a potential settlement that could moot the case – this Court finds that efficient use of judicial resources mandates having the bankruptcy court continue to adjudicate the issues, rather than this Court starting fresh.  (See, e.g., Residential Funding, 2015 WL 1062264, at *4-5 (finding that district court's needing to review the bankruptcy court's determination de novo did not outweigh the fact that the bankruptcy judge has greater expertise over the facts and claims in the related bankruptcy and has been closely following the case management plan in the joint proceeding to avoid duplicative discovery and briefing); Lehman Bros. Holdings Inc. v. Intel Corp., 18 F. Supp. 3d 553, 558 (S.D.N.Y. 2014) (emphasizing that efficiencies of keeping cases related to the Lehman bankruptcies in bankruptcy court will not be lost even after Judge Peck retired and Judge Chapman began overseeing the Lehman bankruptcy cases, noting the complexity in the bankruptcies and that Judge Chapman would acquire similar familiarity with related Lehman proceedings); (Moore Macro Fund, 2014 WL 4635576, at *1 ("The bankruptcy court

28

has handled the Lehman bankruptcy for over five years and is
well equipped to address these disputes. The bankruptcy court
recently found that '[r]egardless of whether a particular count
is core or non-core, it is most efficient and eminently sensible
for all disputes involving swap agreements where Lehman and its
affiliates are counterparties to be handled in this Court.' This
is true despite the assignment of a new judge to the Lehman
bankruptcy in January 2014, and it is true even if a district
court has to review the bankruptcy court's findings de novo.")
(citation omitted); <u>Wellmont Health Sys.</u>, 2014 WL 3583089, at *4
(finding that judicial efficiency will be served by keeping the
action in bankruptcy court "given its substantial experience
with the Lehman bankruptcy proceedings, the breadth and
complexity of which are unparalleled, and the numerous swap
agreement disputes that have arisen in the context of those
proceedings") (citation omitted).)

## 2. <u>Uniformity in Bankruptcy Administration</u>

For many of the same reasons, the Court finds that policies
promoting uniformity of bankruptcy administration weigh against
withdrawal of the reference.  The bankruptcy court's
administration of the entire Lehman bankruptcy has been
extensive.  Adjudicating this action in the bankruptcy court

will help promote uniform application of the bankruptcy laws.
(See, e.g., Moore Macro Fund, 2014 WL 4635576, at *1; Wellmont
Health Sys., 2014 WL 3583089, at *5 (finding that uniformity in
the administration of bankruptcy laws weighs in favor of leaving
the case in bankruptcy court, noting that although the claims
are principally private and contractual in nature, "they are
brought within the context of similar disputes arising out of
various derivatives agreements entered into by Lehman and
adjudicated as part of the Lehman bankruptcy") (citation
omitted); Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank,
N.A. (In re Lehman Bros. Holdings Inc.),  480 B.R. 179, 195-97
(S.D.N.Y. 2012) (denying motion to withdraw the reference even
where bankruptcy court could not enter final judgment on all
claims, underscoring that adjudicating the Lehman bankruptcy
cases together efficiently uses judicial resources and promotes
uniformity in administration of bankruptcy proceedings).)


### 3. Delay and Costs to the Parties

Regarding issues of delay and costs to the Parties, this
Court again underscores the bankruptcy court's familiarity with
the proceedings at issue and application of the relevant
provisions of the Bankruptcy Code to swap agreements with Lehman
entities.  The bankruptcy court will adjudicate any remaining

30

issues more quickly and is in a better position to understand the implications of the potential settlement raised in the Lehman Opp.  Accordingly, this factor also weighs against withdrawing the reference.

### 4. Preventing Forum Shopping

Defendants, and Judge Swain in analyzing Plaintiffs' earlier motion to withdraw the reference, raise several concerns regarding forum shopping. (See, e.g., Lehman Opp. at 24-26 (identifying the other occasions on which the Bankruptcy Court has ruled against Plaintiffs).  The Court notes that Plaintiffs' slim briefing in this matter suggests that Plaintiffs may be attempting to use the Supreme Court's holding in Stern improperly to find a new forum.  (See, e.g., Moore Macro Fund, 2014 WL 4635576, at *1 (finding that "maintaining the reference prevents forum shopping," noting that "Stern v. Marshall has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court.") (citation omitted).)  The Court therefore finds that this factor also weighs against withdrawing the reference.

5. <u>Right to a Jury Trial</u>

Here, Plaintiffs include in their Amended Complaint a
demand for a jury trial. Plaintiffs' right to a jury trial,
even if coupled with a finding that the Bankruptcy Court cannot
enter final judgment, "does not compel withdrawing the reference
until the case is ready to proceed to trial." (<u>JPMorgan Chase
Bank</u>, 480 B.R. at 194 (citations and quotation marks omitted);
<u>see also</u> <u>Orion</u>, 4 F.3d at 1101-02 ("If a case is non-core and a
jury demand has been filed, a district court might find that the
inability of the bankruptcy court to hold the trial constitutes
cause to withdraw the reference. However, a district court also
might decide that a case is unlikely to reach trial, that it
will require protracted discovery and court oversight before
trial, or that the jury demand is without merit, and therefore
might conclude that the case at that time is best left in the
bankruptcy court.").) In fact, "it is possible that Plaintiffs'
claims 'may be resolved before the matter is ripe for a trial
before a jury,'" particularly in the present case where
Defendants represent that the underlying cause of action is
likely moot due to a settlement. (<u>JPMorgan Chase Bank</u>, 480 B.R.
at 194 (citation omitted); <u>see also</u> <u>In re Arbco Capital</u>, 479
B.R. at 267 (emphasizing that the claims may be resolved before
the matter is ripe for trial and that "withdrawing the reference
is premature where discovery has not commenced and plaintiffs

32

have not yet survived a motion to dismiss") (citation and quotation marks omitted).)

III.    Conclusion

Plaintiffs' Motion to Withdraw the Reference to the bankruptcy court is DENIED.  The Clerk of the Court is directed to terminate all pending motions and close the matter pending in the district court, Ka Kin Wong, et al., v. HSBC Bank USA, N.A., et al., 11-cv-6194 (S.D.N.Y.).

SO ORDERED.

Dated:    June 15, 2015
          New York, New York

Deborah A. Batts
United States District Judge